**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

─────────────────────────────

**LARRY E. WHITE, II,**

        **Plaintiff,**

    **v.**                                                                          **19-CV-500 (HKS)**

**CSX TRANSPORTATION, INC., and**
**JOHN DOE 1 to John DOE 5,**

        **Defendants.**

─────────────────────────────

## <u>DECISION AND ORDER</u>

In accordance with 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct all further proceedings in this case, including entry of final judgment.  Dkt. #19.

Plaintiff Larry E. White, II, commenced this negligence action against defendant CSX Transportation, Inc. ("CSX" or "CSXT"), in New York State Supreme Court, County of Erie, alleging that he was injured on March 9, 2018, while using a shortcut to cross over CSX's railroad tracks in the vicinity of Fay Street and Shepard Street in the City of Buffalo, when a railroad switch closed on his foot. Dkt. #1-1. Defendant removed the case to this Court on the basis of diversity jurisdiction in accordance with 28 U.S.C. § 1446(b)(2)(A). Dkt. #1.

Currently before the Court is CSX's motion for summary judgment. Dkt. #23. For the following reasons, CSX's motion for summary judgment is denied.

## FACTUAL BACKGROUND[1]

CSX owns more than 25,000 miles of railroad tracks in the United States, including approximately 127 miles that run through incorporated cities in New York, such as Buffalo. Dkt. #23-16, ¶¶ 5–6. There are approximately 63 remotely controlled switches in the Frontier Yard, where White was injured. Dkt. #23-16, ¶ 10. Remotely controlled power switches may move at any time without prior warning. Dkt. #23-16, ¶ 11. It is not necessary for CSX personnel to be located near a switch for it to function; the switch that injured plaintiff is operated from a remote location approximately 1.25 miles away. Dkt. #23-16, ¶ 12.

There are stairs leading to an overpass with pedestrian sidewalks near where plaintiff crossed the tracks. Dkt. #23-2, pp.117–18. Plaintiff could not remember a time that he used the overpass, however, and testified at his deposition that he "didn't see no need to when [he] could go right across the tracks the easy way." Dkt. #23-2, p.119. On the date he was injured, plaintiff testified that he looked for trains as he approached the railroad tracks but did not look down at the tracks before picking his bike up and starting to jog across the tracks. Dkt. #23-2, pp.168–69. According to plaintiff, he slipped or tripped on something and his foot went into the switch, which then closed on his foot. Dkt. #23-2, pp.170–71.

_____

[1] The facts are taken from CSX's statement of undisputed facts (Dkt. #23-17), Plaintiff's response to that statement (Dkt. #25), and the exhibits provided in support of the parties' positions. Contrary to the local rules, White failed to file a separate statement of undisputed facts in opposition the motion. *See* L. R. Civ. P. 56 (a)(1). Nonetheless, White included facts with some record citations in his affidavit in opposition, which this Court has considered. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules."); *see also Repicci v. Jarvis*, No. 17-CV-132S, 2022 WL 16745495, at *1 (W.D.N.Y. Nov. 7, 2022) (considering facts in opposition papers supported by record citations).

Plaintiff testified that he had received permission from CSX workers to cross the tracks at that location on more than one occasion, but he did not know how many times or over what timeframe. Dkt. #23-2, pp.147–49. He also testified that CSX employees never told him not to cross or to get off the tracks. Dkt. #23-2, p.244.

At his deposition, plaintiff responded in the affirmative when asked whether he had even seen any signs in the vicinity of Shepard Street or Fay Street. Dkt. #23-2, p.146. He could not, however, remember what those signs said or if they were related to the railroad, but he testified that the signs probably said "danger." Dkt. #23-2, p.146. Plaintiff also testified that he had not seen any no trespassing signs in that area at any time on or before the date of the incident. Dkt. #23-2, p.157.

CSX submitted affidavits from employees stating that the "CSXT property in the vicinity of the area where plaintiff claims injury is posted with "NO TRESPASSING-DANGER" signs and other warning signs indicating the danger of entering private railroad property. Dkt. #23-16, ¶ 16. CSX also submitted an affidavit from Michael Johnson, a Special Agent within the CSX Railroad Police Department, who states:

> CSXT continuously posts "NO TRESPASSING-DANGER" and other warning signs throughout the area where Plaintiff claims to have been injured, including before, during and after the date of Plaintiff's alleged accident.
>
> Examples of the type of signs that CSXT posts (and that were posted in March 2018) in the immediate area of this alleged incident are attached to the Bloom Declaration as Exhibit J. These ten photos are of the area at QDB0.5 and are true and accurate depictions as of 2018 of the area where Plaintiff alleges his incident took place.
>
> "NO TRESPASSING-DANGER" signs are sometimes removed, damaged or otherwise defaced as a result of vandalism and, when that happens, they are replaced.

I personally have installed or replaced "NO TRESPASSING-DANGER"
signs in that area, including before the date of Mr. White's alleged incident.

The photos attached to the Bloom Declaration as Exhibit J show the
presence of several "NO TRESPASSING-DANGER" and other warning
signs that were readily visible. These signs include language such as "NO
TRESPASSING, DANGER, KEEP OUT, PRIVATE PROPERTY" or
"WARNING, NO DUMPING-NO TRESPASSING, PRIVATE PROPERTY
OF CSX TRANSPORTATION, INC., VIOLATORS WILL BE
PROSECUTED" and some of the signs also include graphics indicating
that persons were not allowed to enter.

Regardless of whether a person entered railroad property from the end of
Shepard Street or Gatchell Street heading in a northerly direction, or
alternatively entering from Fay Street on the other side of the tracks
heading in a southerly direction, it would be impossible to cross the tracks
without having passed multiple "NO TRESPASSING-DANGER" or other
warning signs that were/are either posted on existing poles or were
freestanding metal signs.

I have personally observed and/or installed/reinstalled such signs before
and after the date of Plaintiff's alleged injury of March 9, 2018.

Dkt. #23-15, ¶¶ 8–9, 12–16. Special Agent Johnson further states that CSX employees

are trained to report unauthorized persons on railroad property without confronting or

otherwise engaging them. Dkt. #23-15, ¶ 17. During the five-year period preceding

plaintiff's injury, CSX Police Officers reported approximately 94 trespasser warnings

and/or arrests within that area. Dkt. #23-15, ¶ 22.


## DISCUSSION AND ANALYSIS

### SUMMARY JUDGMENT STANDARD

A court "shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of showing that

there is no genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986). It may satisfy this burden by relying on evidence in the record, "including

depositions, documents, . . . [and] affidavits," Fed. R. Civ. P. 56(c)(1)(A), or by "point[ing]

to an absence of evidence to support an essential element of the nonmoving party's

claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995)

(citing *Celotex*, 477 U.S. at 322–23); *see* Fed. R. Civ. P. 56(c)(1)(B). Once the movant

has satisfied its initial burden, "the nonmoving party must come forward with specific

facts" showing that there is a genuine dispute of material fact. *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

A genuine dispute of material fact exists "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "must view the evidence in the record

in the light most favorable to the non-moving party" and must draw "all reasonable

inferences in that party's favor." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466

(2d Cir. 2001). However, "conclusory statements, conjecture, or speculation by the party

resisting the motion will not defeat summary judgment." *Kulak v. City of N.Y.*, 88 F.3d 63,

71 (2d Cir. 1996).


**REQUESTS TO STRIKE**

CSX requests that the Court disregard and strike certain portions of White's

Affidavit, the Schmeltzer Affidavit in its entirety, and any unsupported factual assertions

in the Polak Affidavit. Dkt. #26-2, at 9–13.

Under Rule 56(c)(2), "[a] party may object that the material cited to support or

dispute a fact cannot be presented in a form that would be admissible in evidence." Fed.

R. Civ. P. 56(c)(2). District courts have leeway on motions to strike in the context of summary judgment motions. *Nodoushani v. S. Conn. State Univ.*, 507 F. App'x 79, 80 (2d Cir. 2013) (summary order). "While a court is obliged not to consider inadmissible evidence at the summary judgment stage, it remains in that court's discretion whether to strike the inadmissible portions or simply disregard them." *Pacenza v. IBM Corp.*, 363 F. App'x 128, 130 (2d Cir. 2010) (summary order); *accord Nodoushani,* 507 F. App'x at 80 ("While a court is obliged not to consider inadmissible evidence at the summary judgment stage, '[t]o the extent that an affidavit or declaration contains material that does not comply with [Federal Rule of Civil Procedure] 56(e), the [c]ourt may strike those portions, or may simply disregard them.'") (citation omitted).

      In the instant case, the Court need not rely on the challenged materials. Therefore, CSX's requests to strike are denied as moot. *See Cabrera v. Stephens*, No. 16CV3234, 2017 WL 4326511, at *9 (E.D.N.Y. Sept. 28, 2017) ("As the Court has not relied on the Affidavits in arriving at its determination . . . striking the Affidavits is unnecessary."); *Fubon Ins. Co. v. OHL Int'l*, No. 12 CIV. 5035, 2014 WL 1383604, at *11 (S.D.N.Y. Mar. 31, 2014) ("Because the Court denies [Defendant's] motion for summary judgment without relying on the contested [material], [Defendant's] motion to strike is denied as moot."); *Roberts v. Los Alamos Nat. Sec., LLC*, 942 F. Supp. 2d 359, 365 (W.D.N.Y. 2013) (denying motion to strike as moot where "the Court's consideration of that document, or lack thereof, would not alter the outcome").

**ABANDONMENT OF CLAIMS**

CSX also argues that White conceded various arguments by failing to address them in his opposition to the motion. Dkt. #26, at 6–7. A court "may, when appropriate, infer from a [counseled] party's partial opposition [to a motion for summary judgment] that relevant claims or defenses that are not defended have been abandoned." *Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014). Here, however, to the extent White fails to adequately address any of CSX's arguments, the Court will exercise its discretion to consider the merits of plaintiff's claims. *See Keith M. v. Comm'r of Soc. Sec. Admin.*, No. 619CV1169, 2020 WL 6063738, at *8 (N.D.N.Y. Sept. 14, 2020) ("Rather than determining whether plaintiff waived the argument, I will consider the merits."), *R&R adopted*, 2020 WL 6059745 (N.D.N.Y. Oct. 14, 2020); *Estate of M.D. by DeCosmo v. New York*, 241 F. Supp. 3d 413, 423 (S.D.N.Y. 2017) ("[I]n the exercise of its discretion, the Court will not deem the claim abandoned[.]")

**FAILURE TO WARN**

CSX argues that it did not owe a duty to warn a trespasser of an open, obvious and apparent danger such as a working railroad yard. Dkt. #23-18, pp.16-19. Even if CSX had such a duty, it argues that such a failure to warn was not the cause of plaintiff's injury because plaintiff was aware of the danger.[2] Dkt. #23-18, pp.19-22.

---

[2] CSX contends that White "acknowledged that the switch at issue in this case 'presented an apparent danger to pedestrians.'" Dkt. #32-17, at ¶ 19. In his answers to CSX's interrogatories Plaintiff stated the following:

> Upon information and belief, the dangerous/hazardous/defective "switch" that caused injury to the Plaintiff was present for quite some time prior to the injury to the Plaintiff. Its presence presented an apparent danger to pedestrians that CSXT was aware of or should have been aware of that crossed the train tracks in the area of Plaintiffs injury.

White argues that he "lacked the requisite understanding and appreciation for the risks associated with these moving switches that were neither labeled nor identified in any way shape or form." Dkt. #25, at ¶ 14.

It is well settled that "a landowner has a duty to exercise reasonable care in maintaining his own property in a reasonably safe condition under the circumstances." *Galindo v. Town of Clarkstown*, 2 N.Y.3d 633, 636 (N.Y. 2004).[3]   The nature and scope of that duty and the persons to whom it is owed require consideration of the likelihood of injury to another from a dangerous condition on the property, the seriousness of the potential injury, the burden of avoiding the risk and the foreseeability of a potential plaintiff's presence on the property. *Id.* Thus, under New York law, "a railroad, like any other landowner, owes a duty to exercise reasonable care under the circumstances to persons on its land." *Raspente v. Nat'l R.R. Passenger Corp.*, 111 F.3d 239, 242 (2d Cir. 1997); S*ee Rhinehart v. CSX Transp., Inc.*, No. 10-CV-86, 2017 WL 3500018, at *3 (W.D.N.Y. Aug. 16, 2017) ("CSX owes a duty toward those on or near its tracks regardless of their status—that is, regardless of whether they are trespassers or invitees welcome on the property."), *reconsideration denied*, 2018 WL 507155 (W.D.N.Y. Jan. 23, 2018).

The scope of an alleged tortfeasor's duty is largely "a product of foreseeability and fairness." *Rhinehart*, 2017 WL 3500018, at *4. Ordinarily, "a landowner's duty to

––––––––––––––––––––

Dkt. #23-9, at 4. The Court does consider this to be an admission that the danger posed by the railroad switch was open and obvious or known by White.

[3] In a diversity case such as this, the Court applies the substantive law of the state whose law would apply under choice-of-law rules - here, New York State. *See, e.g.*, *Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir. 1999).

warn of a latent, dangerous condition on his property is a natural counterpart to his duty to maintain his property in a reasonably safe condition." *Galindo*, 2 N.Y.3d at 636. While New York "no longer frames duty of care in terms of the status of the entrant—such as in invitee, licensee, or trespasser—the circumstances under which a person enters another's property [are] relevant to determining what would be reasonable to impose upon landowners in terms of safety measures." *Bowen v. Nat'l R.R. Passenger Corp.*, 363 F. Supp. 2d 370, 375 (N.D.N.Y. 2005). Accordingly,

> the law has developed such that it recognizes a higher duty of care where the railroad has knowledge of a person's entry and the scope of the duty expands in relation to the knowledge. Knowledge need not be actual but may be imputed through notice of an entrant's presence.

*Id.; See Hendrickson v. Ryan*, 262 A.D.2d 930 (3d Dep't 1999) ("[A] landowner owes to individuals who are foreseeably present on the property a duty to maintain the premises in a reasonably safe condition and a duty to warn of concealed dangers of which the landowner is or should be aware.").

A landowner "has no duty to warn of an open and obvious danger." *Tagle v. Jakob*, 97 N.Y.2d 165, 169 (N.Y. 2001). As the New York Court of Appeals has explained,

> [w]here a danger is readily apparent as a matter of common sense, there should be no liability for failing to warn someone of a risk or hazard which he [or she] appreciated to the same extent as a warning would have provided. Put differently, when a warning would have added nothing to the user's appreciation of the danger, no duty to warn exists as no benefit would be gained by requiring a warning. On the other hand, the open and obvious defense generally should not apply when there are aspects of the hazard which are concealed or not reasonably apparent to the user.

*Liriano v. Hobart Corp.*, 92 N.Y.2d 232, 242 (N.Y. 1998) (citations omitted). The hazard or dangerous condition "must be of a nature that could not reasonably be overlooked by anyone in the area whose eyes were open, making a posted warning of the presence of

the hazard superfluous." *Westbrook v. WR Activities-Cabrera Markets*, 5 A.D.3d 69, 71 (1st Dep't 2004) (citations omitted). The question of whether a condition is open and obvious "is generally a jury question, and a court should only determine that a risk was open and obvious as a matter of law when the facts compel such a conclusion." *Borley v. United States*, 22 F.4th 75, 81 (2d Cir. 2021) (citation omitted); *accord Liriano*, 92 N.Y.2d at 242.

In the instant case, CSX acknowledges that it "was aware that trespassers would use the area to cut across the tracks[.]" Dkt. #26-2, at 14.[4] Thus, "there is sufficient evidence here for a reasonable jury to find that CSX knew, or should have known, that the cut-through was frequently used by the public for a number of years." *Rhinehart*, 2017 WL 3500018, at *7. CSX therefore owed White - who was "foreseeably present on the property" - a "duty to warn of concealed dangers of which [CSX] is or should be aware." *Hendrickson*, 262 A.D.2d at 930.

The undisputed facts do not compel the conclusion that the danger posed by the railroad switch was open and obvious as a matter of law such that it "could not reasonably be overlooked by anyone in the area whose eyes were open, making a

---

[4] CSX acknowledges that it "was aware that trespassers would use the area to cut across the tracks," but emphasizes that "it undertook multiple efforts to discourage/detain/intercept such persons." Dkt. #26-2, at 14. The adequacy of those measures, however, go to whether CSXT breached its duty. Under New York law, "breach and proximate cause are questions for the finder of fact." *Guzman v. Wackenhut Corp.*, 394 F. App'x 801, 804 (2d Cir. 2010) (summary order); *see Boria v. Port Auth. of New York & New Jersey*, No. 95 CV 4912 (SJ), 1998 WL 34588, at *3 (E.D.N.Y. Jan. 29, 1998) ("Generally, once a duty is found, the question of breach of duty is one of fact for the trier of fact to resolve unless reasonable minds could not differ as to the conclusions to be drawn from the evidence.").Thus, even if it were undisputed that warning signs were posted in the vicinity on the date of the incident, there is no suggestion that any of the signs warned about the railroad switch in particular. Moreover, the adequacy of CSX's efforts to deter trespassers is likewise an issue for a jury to decide.

posted warning of the presence of the hazard superfluous." *Westbrook*, 5 A.D.3d at 71.[5] There are "aspects of the hazard - including the risk that [the railroad switch could close without warning] - which a jury could reasonably find were concealed or not reasonably apparent to [White]." *Brady v. Dunlop Tire Corp.*, 275 A.D.2d 503, 504 (3d Dep't 2000). According to White's deposition testimony, he knew that trains ran on the railroad tracks, that the trains could move at any given time, and that trains and railroad tracks could be dangerous. Dkt. #23-2, at 149–151; Dkt. #23-17, at ¶ 18. White also testified that he had lacked any knowledge of what railroad switches were before the incident. Dkt. #23-2, at 243. White always wondered how trains changed direction, and he knew that something had to happen to allow the train to turn, but he did not know how this happened. *Id.* at 150.

Although White appreciated the risks from moving trains, it is not clear that a warning that the railroad switches could close without warning "would have added nothing to [his] appreciation of the danger" such that "no benefit would be gained by requiring a warning." *Liriano*, 92 N.Y.2d at 242; S*ee Moody v. CSX Transp.*, No. 6:07-CV-06398, 2016 WL 11630020, at *9 (W.D.N.Y. July 22, 2016) ("Although it is clear from the facts that plaintiff appreciated the danger that train cars moved during the daytime within the yard, it is not clear that a warning that the cars could move, at night and without warning, 'would have added nothing to [her] appreciation of the danger.'") (citation omitted); C*f. Galletta v. Valmet, Inc.*, No. 5:04-CV-0313, 2007 WL 963288, at *6

---

[5] Special Agent Johnson's conclusory assertion that "[r]ailroads, tracks, switches and trains present open and obvious dangers to all persons on railroad property" is insufficient. Dkt. #23-16, at ¶ 14; *See Rhinehart v. CSX Transp., Inc.*, No. 10-CV-86, 2018 WL 507155, at *3 (W.D.N.Y. Jan. 23, 2018) (rejecting argument that railroad tracks themselves are an open and obvious danger).

(N.D.N.Y. Mar. 30, 2007) ("[P]laintiff already knew at the time of his accident that he should not reach for paper going into the nip point and yet, he did it anyway."). "Because jury questions exist regarding the extent of plaintiff's knowledge of the hazard and whether the hazard was open and obvious, defendant has not demonstrated its entitlement to summary judgment dismissing plaintiff's failure-to-warn claim." *Swiernik v. Parker Hannifin Corp.*, No. 611CV238, 2014 WL 12599389, at *6 (N.D.N.Y. Mar. 17, 2014); See *Liriano*, 92 N.Y.2d at 241(Because "reasonable minds might disagree as to the extent of [White's] knowledge of the hazard, the question is one for the jury.").


### FAILURE TO FENCE/BARRICADE

CSX also argues that a railroad has no duty under New York law to fence or patrol the right of way to prevent trespassers. Dkt. #23-18, pp.22-23 & 34-35.

Plaintiff argues that it is a jury question whether or not CSX should have erected a fence or barrier at the cut through.

> It is true that New York law does not require railroads to fence in or erect barriers around their tracks, and that absent a statutory mandate or other extraordinary circumstances, railroads have no duty to fence the railroad tracks. *See Bowen*, 363 F. Supp. 2d at 378 ("Absent a statutory requirement, railroad owners do not have a duty to fence their property to prevent trespassing."); *see also Gil ex. Rel. v. Nat'l R.R. Passenger Corp.*, 2007 WL 2230176 (E.D.N.Y. 2007). And common sense precludes the notion that railroads must erect thousands of miles of fence—on both sides of the tracks, no less—to prevent trespassers from crossings anywhere. But the duty alleged here would not require such a nonsensical result; the duty here is one of reasonable care to those using a known shortcut across the tracks and therefore foreseeably on CSX's property at a particular location.

*Rhinehart*, 2017 WL 3500018, at *8 (footnote omitted); *cf. Wilde v. CSX Transp., Inc.*, No. 14-CV-50, 2016 WL 7438839, at *4 (W.D.N.Y. Dec. 27, 2016) ("Because CSXT was

not on notice of trespassers in the area, the duty owed . . . was limited and did not include a duty to fence the wingwall."). Thus, even though "New York law does not impose a duty to fence on railroads . . . New York law does not absolve railroads from posting signs, erecting barriers, or otherwise taking reasonable steps to discourage expected trespassers." *Rhinehart*, 2018 WL 507155, at *2. Thus, "the issue of fencing – or other barriers – remains a material issue of fact sufficient to preclude summary judgment." *Rhinehart*,2017 WL 3500018, at *8.

### FEDERAL PREEMPTION

CSX argues that any attempt to impose a duty to warn or take other preventative measures, including fencing, at unauthorized pedestrian crossings would conflict with the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. §§ 20101 *et seq*. and the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. §§ 10101 *et seq*. Dkt. #23-18, at 23–33.

The FRSA was enacted in 1970 "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. The statute contains an express preemption clause which provides that laws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable. 49 U.S.C. § 20106(a). However, the statute permits a state to adopt or continue to enforce a law, regulation, or order related to railroad safety until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the state requirement. 49 U.S.C. § 20106(a)(2). States may also adopt a more stringent law where necessary to eliminate a local safety hazard so long as the

state law is not incompatible with a federal law, regulation or order and does not unreasonably burden interstate commerce. 49 U.S.C. § 20106(a)(2)(A). In 2007, the FRSA preemption provision was amended to clarify that the FRSA does not preempt an action under state law seeking damages for personal injury, death, or property damage alleging that a party: (A) failed to comply with the federal standard of care established by a regulation or order issued by the Secretary of Transportation; (B) failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by the Secretary of Transportation; or (C) failed to comply with a state law, regulation or order that is not incompatible with 49 U.S.C.§ 20106(a)(2)(A).

In *Zimmerman v. Norfolk Southern Corporation,* the Third Circuit assessed how to interpret the FRSA's preemption provision in light of the 2007 amendment and determined that the preemption analysis under the amended FRSA requires a two-step process. 706 F.3d 170, 178 (3d Cir. 2013).[6] First, the Court should determine "whether the defendant allegedly violated either a federal standard of care or an internal rule that was created pursuant to a federal regulation."[7] *Id.* "If so, the plaintiff's claim avoids preemption." *Id., citing* 49 U.S.C. § 20106(b)(1)(A)-(B). If not, the Court moves to the

---

[6] In *Rhinehart*, the Hon. Lawrence J. Vilardo recognized that although the Second Circuit had considered Section 20106 after it was amended in 2007, it did not directly address the amended subsection. 2017 WL 3500018, at *6 n.4, *citing Island Park, LLC v. CSX Transp.*, 559 F.3d 96, 107 (2d Cir. 2009). Judge Vilardo proceeded to apply the Third Circuit's two-step analysis in *Zimmerman* because *Zimmerman* "is not inconsistent with the Second Circuit's holdings concerning Section 20106."

[7] The Court will not consider White's conclusory allegations that CSX was required to follow certain standards (Dkt. #25, ¶¶ 37, 44–45), because White has not identified how CSX violated any statute, regulation, or internal rule.

second step and should determine "whether any federal regulation covers the plaintiff's claim." *Id., citing* 49 U.S.C.§ 20106(a)(2).

"To prevail on the claim that the regulations have pre-emptive effect, [defendant] "must establish more than that they 'touch upon' or 'relate to' that subject matter, for 'covering' is a more restrictive term which indicates that pre-emption will lie only if the federal regulations substantially subsume the subject matter of the relevant state law." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993) (citation omitted). "A court should read the term "cover" in a restrictive manner because, as the Supreme Court has recognized, the FRSA's preemption provision 'displays considerable solicitude for state law.'" *See Rhinehart*, 2017 WL 3500018, at *7 *quoting Easterwood,* 507 U.S. at 665; *See also, MD Mall Assocs., LLC v. CSX Transp., Inc.*, 715 F.3d 479, 489 (3d Cir. 2013) ("When interpreting the FRSA's preemption provisions, we apply a general presumption against preemption.") (internal quotation omitted).

The ICCTA affords the Surface Transportation Board exclusive jurisdiction over "transportation by rail carriers." 49 U.S.C. §10501(b)(1). The statute's jurisdictional provision also contains an express preemption clause stating that "the remedies provided . . . with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." 49 U.S.C. §10501(b)(2). Although the preemption clause "is unquestionably broad, it does not categorically sweep up all state regulation that touches upon railroads – interference with rail transportation must always be demonstrated." *Island Park*, 559 F.3d at 104. Thus, the ICCTA "preempts all state laws that may reasonably be said to have the effect of managing or governing rail transportation, while permitting the continued application of laws having a more remote

or incidental effect on rail transportation." *Id.* at 102–03 (2d Cir. 2009) (quotation marks and citations omitted).

Upon examination of the interplay between the ICCTA and FRSA, courts have consistently determined that the "FRSA provides the appropriate basis for analyzing whether a state law, regulation or order affecting rail safety is pre-empted by federal law." *BNSF Ry. Co. v. Hiett*, 22 F.4th 1190, 1195 (10th Cir. 2022) *quoting Island Park,* 559 F.3d at 107 (collecting cases); *See Rhinehart*, 2017 WL 3500018, at *5 n.3. Where, as here, plaintiff's allegations "involve railroad safety procedures, which the FRSA - not the ICCTA—was enacted to regulate . . . the ICCTA does not preempt [p]laintiff's claims." *Smith v. CSX Transp., Inc.*, 2014 WL 3732622, at *2 (N.D. Ohio July 25, 2014).

### Failure To Warn

CSX contends that White's failure to warn claim is preempted because it conflicts with federal regulations covering pedestrian crossings over railroad tracks. Dkt. #23-18, at 25–27. More specifically, CSX argues that 49 U.S.C. § 20153(f) "reflects a congressional determination that railroads should not be required to issue warnings (or take other preventative measures) at unauthorized crossings" and that the imposition of such requirements under state law is an obstacle to nationally uniform standards that Congress sought to preempt. Dkt. #23-18, at 26–27. This argument was expressly rejected in *Rhinehart:*

> The regulation of authorized crossings does not evidence an intent to preempt safety measures anywhere along the tracks and does not preclude a duty to [warn or] prevent or discourage crossing other than where it is authorized. Again, CSX's argument leads to the nonsensical conclusion that (1) the federal safety regulations that apply at authorized crossings do not apply to frequently used cut-throughs like the one here

because they are not authorized crossings, but (2) any safety measures a state might adopt to protect pedestrians at such cut-throughs are preempted. By establishing federal standards that apply only at authorized crossings, Congress did not imply that *no* standards apply at known but unauthorized crossings.

2017 WL 3500018, at *10.

CSX also points to regulations governing the use of locomotive horns at railroad crossings. Dkt. #23-18, p.25, *citing* 49 C.F.R. §§ 222.21 and 222.27. But "Congress's judgment to require railroads to post warning signs in lieu of horns in quiet zones, *see, e.g.*, 49 C.F.R. §§ 222.25, 222.27, does not evidence an intent to 'substantially subsume' warning requirements across the board." *Rhinehart*, 2017 WL 3500018, at *9. Moreover, unlike in *Rhinehart*, White's claims do not revolve around warning of an oncoming train, but rather warning of the danger posed by a railroad switch that may suddenly close without warning. *Cf. Rhinehart*, 2017 WL 3500018, at *12 ("Unlike warning signs, which are discussed tangentially, Section 222 expressly concerns the use of locomotive horns and therefore covers and substantially subsumes state law regulating when train horns must be sounded."). In sum, "[a] common law duty to erect warning signs is not incompatible with federal law." *Rhinehart*, 2017 WL 3500018, at *9.

**Failure To Fence/Barricade**

CSX argues that federal law preempts any duty to fence a railroad right-of-way. Dkt. #23-18, at 29–32. Specifically, CSX claims that "the subject matter of fencing railroad tracks has been covered both affirmatively, through 49 CFR § 213.361, and negatively, through the decision not to otherwise issue regulations pertaining to fencing railroad ways." Dkt. #23-18, at 31.

49 C.F.R. § 213.361 requires, in areas of demonstrated need, Federal Railroad Administration approval of a barrier/right-of-way plan to prevent vandalism, launching of objects from overhead bridges or structures into the path of trains, and intrusion of vehicles from adjacent rights of way. CSX has not met its burden to establish that this regulation substantially subsumes White's failure to fence/barricade claim. To the contrary, this Court agrees with Judge Vilardo that "a duty to construct barriers to deter expected trespassers is not incompatible with federal law and therefore is . . . not preempted." *Rhinehart*, 2017 WL 3500018, at *10. As in *Rihinehart*, recognizing a common law duty to discourage trespassers at a "well-known and established cut-through" does not open the floodgates to impose the same duty anywhere along CSX's miles of railroad tracks. *Id*. at 10.

## PROXIMATE CAUSE

CSX contends that plaintiff's reckless behavior was the sole cause of his injury, and therefore it is not liable for negligence. Dkt. #23-18, at 36.

Where "the sole legal cause of plaintiff's injuries is his own reckless conduct, which showed a disregard for an obvious hazard, a defendant is not liable in negligence." *Brown v. Metro. Transit Auth.*, 281 A.D.2d 159, 160 (1st Dep't 2001). The "question of superseding cause itself generally is one for the jury[,]" and "[o]nly in rare instances can the question be decided as a matter of law." *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 905 (2d Cir. 1991). As discussed above, Plaintiff's deposition testimony "suggest[s] that he did not appreciate and ignore a known danger, but that he reasonably may not have recognized the dangers posed by [railroad switches] that

might [close]." *Rhinehart*, 2017 WL 3500018, at \*14. Accordingly, a reasonable juror could find that, if CSX did fail to warn Plaintiff of the danger posed by railroad switches, "this breach of duty was sufficient to play some role in causing [White's] injury[,] . . . regardless of whether [White's] actions rendered [him] negligent as well." *Moody*, 2016 WL 11630020, at \*8 (W.D.N.Y. July 22, 2016).


## CONCLUSION

For the reasons set forth above, CSX's motion for summary judgment (Dkt. #23), is **DENIED.**

**SO ORDERED.**

**DATED:**      **Buffalo, New York**
             **October 31, 2023**

                                        *s/ H. Kenneth Schroeder, Jr.*
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**