**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**LARRY E. WHITE, II,**

**Plaintiff,**

**v.**

**19-CV-500Sr**

**CSX TRANSPORTATION, INC.**

**Defendant.**

---

**DECISION ORDER**

Pursuant to 28 U.S.C. § 636(c), the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment. Dkt. #19.

Plaintiff commenced this negligence action against defendant CSX Transportation, Inc. in New York State Supreme Court, County of Erie, alleging that he was injured on March 9, 2018, while using a shortcut to cross over CSX's railroad tracks in the vicinity of Fay Street and Shepard Street in the City of Buffalo, when a railroad switch closed on his foot. Dkt. #1-1. Defendant removed the case to this Court on the basis of diversity jurisdiction in accordance with 28 U.S.C. § 1446(b)(2)(A). Dkt. #1.

This case has been scheduled for a jury trial to commence on **Tuesday, July 16, 2024** at **9:30 am.** Currently before the Court are the parties' motions *in limine.* Dkt. #35 & Dkt. #36.

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). "The trial court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *United States v. Ozsusamlar*, 428 F. Supp.2d 161, 164 (S.D.N.Y. 2006). "Indeed, courts considering a motion *in limine* may reserve judgment until trial, so that the motion is placed in the appropriate factual context." *Scott v. City of New York,* 591 F. Supp.2d 554, 557 (S.D.N.Y. 2008). A ruling on a motion *in limine* is a preliminary determination subject to change as the case unfolds at trial. *Highland Capital Mgmt, L.P. v. Schneider*, 551 F. Supp.2d 173, 176 (S.D.N.Y. 2008).

**Plaintiff's Criminal Convictions**

Plaintiff moves to preclude evidence of his prior convictions, arguing that they do not involve dishonesty or false statements and that the probative value of his convictions are substantially outweighed by their prejudicial impact. Dkt. #35-1, ¶ 5. Plaintiff also notes that his convictions for sexual misconduct and violation of post release supervision occurred more than ten years ago. Dkt. #35.

Defendant argues that plaintiff's criminal convictions are relevant to his lost wage claim, estimated to be in excess of $440,000. Dkt. #36-5, pp.3-4. Specifically defendant argues that plaintiff has been incarcerated at least twice for a period in excess of two years in the 6 years following the incident alleged in the complaint and is not scheduled to be released until 2027. Dkt. #37, pp.2-3. Defendant also argues that plaintiff's inclusion on the New York State Sexual Offender Registry as a Class 3 offender, which is defined as someone with a high risk of repeat offense and a threat to public safety, further limits his employment prospects. Dkt. #37, p.3. In addition, defendant argues that plaintiff's convictions are relevant to his credibility, which is a central issue given the fact that plaintiff's injury was unwitnessed and unreported and that plaintiff has provided different accounts of how he was injured. Dkt. #36-5, pp.4-5.

Plaintiff replies that defendant was advised that plaintiff would not be seeking lost wages while incarcerated, but would request minimum wage for the time period before and after his release from incarceration. Dkt. #39, pp.4-5.

Pursuant to the New York State Department of Corrections and Community Supervision and the New York Sex Offender Registry, plaintiff was sentenced in 2011 to a term of imprisonment of 6 years following his conviction for attempted criminal sexual act in the second degree and attempted course of sexual conduct against a child, second degree. https://nysdoccslookup.doccs.ny.gov/. He is designated a risk level 3, sexually violent offender. https://www.criminaljustice.ny.gov/. Defendants proffer that plaintiff was incarcerated from March 2011 to April 2016 and from May 4, 2019

through October 1, 2019, following a violation of parole with respect to the 2011 convictions. Dkt. #36-5, p.3. Plaintiff is currently incarcerated for a 5 year term following his 2021 conviction for attempted criminal possession of a weapon, second degree. https://nysdoccslookup.doccs.ny.gov/.

Federal Rule of Evidence 609 governs the admissibility of a criminal conviction for impeachment purposes. Specifically, Rule 609(a) provides that for purposes of attacking the character for truthfulness of a witness, evidence that the witness has been convicted of a crime must be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year or if the elements of the crime required proof or admission to a dishonest act or false statement. Pursuant to Rule 403, the Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice; confusion of the issues; misleading of the jury; undue delay; wasted time, or cumulative evidence. In balancing probative value against prejudicial effect under Federal Rule of Evidence 403, this Court must examine the following factors: (1) the impeachment value of the prior crime; (2) the remoteness of the prior conviction; (3) the similarity between the past crime and the conduct at issue; and (4) the importance of the credibility of the witness." *Starmel v. Tompkin,* 634 F. Supp.3d 41, 45 (N.D.N.Y. 2011), *quoting Daniels v. Loizzo*, 986 F.Supp. 245, 250 (S.D.N.Y. 1997). Where more than ten years have passed from the date of conviction or release from confinement for such conviction, whichever is later, evidence of the conviction is admissible only if its probative value substantially outweighs its prejudicial effect and reasonable written notice has been provided of the

party's intent to use such evidence so that the opposing party has a fair opportunity to contest its use. F.R.E. 609(b).

Accepting defendant's proffer that plaintiff was originally released on the 2011 convictions in April of 2016, none of his convictions fall within F.R.E. 609(b). Moreover, plaintiff's convictions were punishable by imprisonment in excess of one year so as to fall within F.R.E. 609(a) and do not rest upon a determination that plaintiff committed a dishonest act or false statement. Applying the 403(b) factors, the Court concludes that plaintiff's convictions and dates of incarceration are relevant to calculating plaintiff's earning capacity as well as the jury's assessment of his credibility. *See Hardy v. Adams*, 654 F. Supp.3d 159, 168 (N.D.N.Y. 2023) (Rule 609(a)(1) presumes that all felonies are at least somewhat probative of a witness's propensity to testify truthfully). However, crimes of violence, including crimes of sexual violence are generally not considered particularly probative as to honesty or veracity. *See Bradshaw v. Burns*, 656 F. Supp.3d 369, 372 (N.D.N.Y. 2023) (collecting cases). In addition, the conduct underlying these crimes occurred more than twelve years ago, rendering them of less probative value. *Id.* at 373. Most importantly, admission of convictions for sexual abuse creates a substantial risk of prejudicing the jury against plaintiff. *See Id.* Accordingly, the Court determines that defendant may not impeach plaintiff regarding his 2011 felony convictions.

With respect to the conviction for which plaintiff is currently incarcerated, convictions for weapons possession are also generally not particularly probative as to

honesty or veracity. *Hardy v. Adams*, 654 F. Supp.3d 159, 168 (N.D.N.Y. 2023). However, given the recency of this conviction and the relevance of plaintiff's status as a felon to his lost earnings claim, and upon consideration of the importance of plaintiff's credibility given the apparent absence of witnesses to plaintiff's injury, the Court finds that defendant may solicit the statutory name of the offense, date of conviction and sentence imposed for plaintiff's most recent conviction.

**Spoliation**

Defendant seeks an adverse inference instruction based upon plaintiff's destruction of the sneakers he was wearing when he was injured. Dkt. #36-5, p.5. Specifically, plaintiff testified at his deposition that he threw his sneakers away a couple of months after his injury, during approximately the same time period in which he retained counsel. Dkt. #36-5, p.5. Defendant argues that the condition of plaintiff's sneakers at the time of his injury is critical, particularly given plaintiff's testimony that he threw them away because he was angry that they caused him to slip when he was crossing the tracks. Dkt. #36-5, p.7. Defendant asks the Court to issue an adverse inference that the sneakers would have provided favorable evidence for defendant. Dkt. #36-5, p.9.

Plaintiff responds that he was never served with a notice to preserve the sneakers and notes that his complaint was not filed until seven months after his injury. Dkt. #39, p.5. Plaintiff argues that he disposed of his sneakers because he was frustrated and would not be needing them again. Dkt. #39, p.7.

Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. *Richard v. Dignean*, 332 F.R.D. 450, 466 (W.D.N.Y. 2019), *quoting West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). A party seeking sanctions for spoliation of evidence must establish that: (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the records were destroyed with a culpable state of mind; and (3) the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Residential Funding Corp. v. DeGeorge Fin*., 306 F.3d 99, 107 (2d Cir. 2002). The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation. *Richard,* 332 F.R.D. at 467. The "culpable state of mind" requirement is satisfied by a showing that the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it, or negligently. *Residential Funding*, 306 F.3d at 108. With respect to the third factor, the party seeking sanctions for spoliation must demonstrate that the evidence would have been helpful in proving its claims or defenses, *i.e*., that the absence of such evidence causes prejudice. *Pizella v. Liberty Gas Station & Convenience Store, LLC*, 410 F. Supp.3d 425, 433 (N.D.N.Y. 2019). Sanctions are not appropriate where "there is no extrinsic evidence tending to show that the destroyed evidence would have been unfavorable to the spoliator." *Turner v. Hudson Transit Lines, Inc*., 142 F.R.D. 68, 77 (S.D.N.Y. 1991). Trial judges have wide discretion to impose sanctions for spoliation, including preclusion, monetary sanctions or adverse

inference instructions, even in cases which do not rise to the level of outrageous culpability. *Richard,* 332 F.R.D. at 467. The goals for imposing such sanctions include deterring parties from engaging in spoliation; placing the risk of erroneous judgment on the party that created that risk; and restoring the prejudiced party to the same position he would have been absent the destruction of evidence by the opposing party. *Pizella,* 410 F. Supp.3d at 434-435.

While defendant is free to inquire of plaintiff regarding the absence of his footwear and to suggest to the jury whatever inferences it believes should flow from plaintiff's actions in discarding them, the Court does not find that spoliation sanctions are warranted given that plaintiff has already testified that he discarded them because he was angry that they caused him to slip as he was crossing the tracks.

**Hearsay**

At his deposition, plaintiff testified that railroad workers had told plaintiff to go ahead and cross the tracks, but was unable to estimate how many times he asked permission to do so or when any such conversations took place. Dkt. #23-2, pp.147-49.

Defendant seeks to preclude such testimony as hearsay. Dkt. #36-5, pp.9-10. Defendant also argues that evidence of alleged permission given to plaintiff on other occasions by unidentified railroad personnel would not be relevant and would be prejudicial to defendant. Dkt. #36-5, p.10.

Plaintiff responds that he is entitled to testify as to his present sense impression that he was permitted to cross the railroad tracks. Dkt. #39, p.7. Plaintiff states that he is not seeking "to prove what others told him, but what his impression was by being waved across the tracks as well as comments made to [him]. Dkt. #39, p.7.

Federal Rule of Evidence 801(c) defines hearsay as an out of court statement introduced to prove the truth of the matter asserted. Pursuant to Federal Rule of Evidence 803(1), a present sense impression is a "statement describing or explaining an event or condition, made while or immediately after the declarant perceived it. To qualify as a present sense impression, a hearsay statement must satisfy three conditions: (1) the statement must describe or explain the event perceived; (2) the declarant must have in fact perceived the event described; and (3) the description must be substantially contemporaneous with the event in question. *Wilson v. Isaacson*, 15-CV-23, 2023 WL 7136269, at *9 (E.D.N.Y. Sept. 18, 2023). Such statements are considered to be trustworthy because the contemporaneity of the event and its description limits the possibility for intentional deception or failure of memory. *Id.* In the instant case, however, plaintiff's statement was made at his deposition, which occurred more than 18 months after his injury and an unknown period of time after the railroad workers are alleged to have given plaintiff permission to cross the tracks. Accordingly, plaintiff has not established an exception to the hearsay rule with respect to this testimony.

**Expert Witness Testimony**

Defendant argues that John Schmelzer, a retired CSX locomotive engineer, should be precluded from testifying as either a fact witness or expert witness because he has no personal knowledge of plaintiff's alleged incident and no personal knowledge of the conditions in and around the railroad yard at the time of plaintiff's injury. Dkt. #36-5, p.10. Defendant argues that Mr. Schmelzer's employment with the railroad ended in 2008, rendering any factual testimony from him speculative. Dkt. #36-5, p.10. To the extent that plaintiff intends to elicit expert testimony from Mr. Schmelzer, or any other witness, defendant argues that plaintiff did not identify any expert witness. Dkt. #36-5, pp.11-12.

Plaintiff responds that Mr. Schmelzer should be permitted to testify as a lay witness regarding the operations and staffing of the railyard and how a power switch could inflict an injury as suffered by plaintiff. Dkt. #39, p.8. Plaintiff argues that "Mr. Schmelzer would be a lay witness who could assist the jury in determining [an] issue of fact" as permitted by F.R.E. 701. Dkt. #39, p.8.

On June 18, 2024, plaintiff emailed defendant that plaintiff intended to call Tom Zajak as an expert witness at trial to explain the operation of the railyard and the power switches, as well as photographs. Dkt. #38-2. More specifically, plaintiff advises that Mr. Zajak "will identify how a switch operates (open and closing), how the Yard Master directs the Switch Tender to operate switches, how they blink when they switch and lock and also how the switches close as well as how it is possible that [plaintiff's]

foot got caught in some part of the switch, thus crushing his large toe and small toes." Dkt. #38-3, p.3.

Defendant promptly moved to preclude testimony from Mr. Zajak, or any other purported expert, for failure to comply with expert disclosure requirements. Dkt. #38-6, pp.3-7. In addition, defendant argues that although plaintiff identifies Mr. Zajak as a former employee, they found no record for an employee by that name, but did locate an employee named Thomas Zajac who retired in 2009. Dkt. #38-1, ¶¶ 26-27.

A Case Management Order was entered on June 20, 2019 setting February 28, 202 as the deadline for plaintiff to provide expert witness disclosure. Dkt. #8. Pursuant to Rule 26(a)(2), plaintiff was required to disclose the identity of any witness he intended to use at trial to present evidence pursuant to Federal Rule of Evidence 702, 703, or 705. Any such disclosure was required to be accompanied by a written report, prepared and signed by the witness, containing a complete statement of all opinions the witness will express and the basis and reasons for them. As plaintiff failed, without explanation, to disclose an expert witness prior to the deadline set forth in the Case Management Order, and has not complied with the requirements of Rule 26(a)(2), he is precluded from offering expert testimony in this matter. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence . . . at trial, unless the failure was substantially justified or is harmless.").

Plaintiff cannot utilize a lay witness to circumvent the rules regarding expert testimony. Rule 701 of the Federal Rules of Evidence limits the opinion testimony of a lay witness to where that testimony is: (a) rationally based on the witness's perception; (b) helpful to clearly understand the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702. Testimony is rationally based on the witnesses's perception where the witness has "first-hand knowledge or observation" and is based upon specialized knowledge where the testimony is rooted in personal perception. *See Actava TV Inc. v. Joint Stock Company "Channel One Russia Worldwide*," 18-CV-6626, 2024 WL 1156614, at *8 (S.D.N.Y. Mar. 18, 2024). Absent any indication that either witness proffered has personal knowledge of the operation of the railyard during the time of plaintiff's injury, their testimony would not be admissible under F.R.E. 701.

**Photographs**

Defendant argues that plaintiff should be precluded from offering photographs that do not depict conditions at the scene of the injury or at the time of the injury. Dkt. #36-5, p.12. Defendant notes that plaintiff proffers that 43 photographs disclosed on March 19, 2024 were taken by plaintiff's attorney, some of which indicate that they were taken between 2020 and 2022. Dkt. #36-5, p.12. Plaintiff argues that the photographs of trespassers on the tracks do not depict conditions at the time of plaintiff's injury and cannot establish notice as of the date of the accident. Dkt. #36-5, p.12. Defendant argues that photographs of pedestrians on the tracks are unnecessary to demonstrate notice, as it does not dispute that trespassers were present in the track

area from time to time. Dkt. #36-5, pp.12-13. Defendant further argues that none of the photographs demonstrate notice of any defective condition of the switch plaintiff alleges caused his injury. Dkt. #36-5, p.13. Finally, defendant argues that the photograph marked as exhibit 6 at plaintiff's deposition should not be admissible because it contains a notation purporting to identify the location of the incident, which constitutes inadmissible hearsay. Dkt. #36-5, p.13.

Plaintiff responds that his attorney "has taken the photographs while investigating this claim and the property" and has disclosed such photographs from the time of plaintiff's initial Rule 26 disclosure and throughout this litigation. Dkt. #39, p.9.

"The standard for admissibility of photographs requires the witness to recognize and identify the object depicted and testify that the photograph is a fair representation of what it purports to portray." *Zerega Av. Realty Corp. v. Horbbeck Offshore Transp*., LLC, 571 F.3d 206, 214 (2d Cir. 2009). As it is unclear from the current record how plaintiff intends to authenticate the photographs and whether plaintiff intends to offer all of the photographs disclosed, the Court directs the parties, prior to the deadline for submission of proposed exhibits to the Court on July 9, 2024, to confer regarding their admissibility and permits defendant to renew its objections to any photographs submitted as proposed exhibits no later than **Thursday, July 11, 2024.**

**Prior or Subsequent Incidents**

Defendant argues that plaintiff must be precluded from offering evidence of any prior or subsequent incidents not substantially similar to the one at issue. Dkt. #36-5, pp.13-14.

Plaintiff responds that defendant has "disclosed prior injury incident(s)," arguing that there is "a history of injury accidents which amount to notice of the dangerous and hazardous condition of its rail yard and pedestrians who enter the rail yard." Dkt. #39, p.9. Plaintiff does not indicate what evidence he wishes to elicit at trial, but merely states: "Finding an identical incident is unlikely but finding incidents where individuals are [injured] on the rail is more likely and goes to the issue of Notice and the regular presence of pedestrians." Dkt. #39, p.10.

Evidence of prior accidents is admissible to demonstrate a defendant's knowledge of a dangerous condition where the accident occurred under substantially similar circumstances to the accident in question. *Vaspasiano v. Metro-North R.R. Co.*, 638 F. Supp.3d 141, 149 (D. Ct. 2022). To the extent that plaintiff is seeking to demonstrate that defendant had notice of a defective condition with respect to the operation of the switches, plaintiff would be limited to introducing evidence of prior switch injuries. Evidence of subsequent switch accidents would only be admitted to demonstrate that the switch was dangerous. *Liriano v. Hobart Corp*., 94 Civ. 5279, 1996 WL 34147 (S.D.N.Y. Jan. 30, 1996). However, the Court understands plaintiff to be seeking to demonstrate more generally that defendant was aware of the

dangerousness of pedestrians crossing their property. Absent any proffer from plaintiff as to the extent of the evidence plaintiff intends to elicit for this purpose, however, the Court is unable to assess the relevance of such evidence as required to resolve this aspect of defendant's motion *in limine*. Accordingly, the Court directs plaintiff to proffer to the Court any evidence of prior or subsequent accidents it seeks to introduce at trial and the basis for admitting such evidence no later than **Monday, July 1, 2024.** Defendant may respond to plaintiff's proffer no later than **Wednesday, July 3, 2024.**

**Defendant's Compliance with State or Federal Laws, Rules and Regulations**

Defendant argues that plaintiff failed to identify any state, federal or local law or regulation that defendant allegedly violated in response to defendant's interrogatories and should, therefore, be precluded from arguing any such alleged violations at trial. Dkt. #36-5.

Plaintiff responds that defendant has failed to comply with the New York State Property Maintenance Code. Dkt. #39, p.11. Plaintiff argues that despite defendant's knowledge of "frequent pedestrian crossings . . . it never marked the power switches or put any warnings on them to warn of their sudden and unexpected movement." Dkt. #39, p.11.

Having failed to provide defendant timely notice of any state or federal laws, rules and regulations it is alleged to have violated, plaintiff is precluded from raising

such state or federal laws, rules and regulations in response to defendant's motion *in limine*.

**SO ORDERED.**

**DATED: Buffalo, New York**
**June 28, 2024**

***s/ H. Kenneth Schroeder, Jr.***
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**