**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

━━━━━━━━━━━━━━━━━━━━━━━━━

**LARRY E. WHITE, II,**

                                    **Plaintiff,**

**v.**
                                                              **19-CV-500Sr**

**CSX TRANSPORTATION, INC.**

                                    **Defendant.**

━━━━━━━━━━━━━━━━━━━━━━━━━

## <u>DECISION ORDER</u>

Pursuant to 28 U.S.C. § 636(c), the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment.  Dkt. #19.

Plaintiff commenced this negligence action against defendant CSX Transportation, Inc. in New York State Supreme Court, County of Erie, alleging that he was injured on March 9, 2018, while using a shortcut to cross over CSX's railroad tracks in the vicinity of Fay Street and Shepard Street in the City of Buffalo, when a railroad switch closed on his foot. Dkt. #1-1. Defendant removed the case to this Court on the basis of diversity jurisdiction in accordance with 28 U.S.C. § 1446(b)(2)(A). Dkt. #1.

By Decision and Order entered June 28, 2024, the Court addressed the parties' motions *in limine*, including defendant's motion to preclude evidence of

defendant's violation of any state or federal laws, rules and regulations. Dkt. #40, pp.15-16. Defendant argued that plaintiff had failed to identify any state, federal or local law or regulation that defendant allegedly violated in response to defendant's interrogatories. Dkt. #36-5. Plaintiff responded that defendant failed to comply with the New York State Property Maintenance Code, which provides that "[p]roperty should be made safe for guests and uninvited guests once their presence is known." Dkt. #39, p.11. Plaintiff did not reference any specific provision of the New York State Property Maintenance Code, nor did he reference prior discovery responses. Dkt #39, p.11. The Court concluded as follows:

> Having failed to provide defendant timely notice of any state or federal laws, rules and regulations it is alleged to have violated, plaintiff is precluded from raising such state or federal laws, rules and regulations in response to defendant's motion *in limine*.

Dkt. #40, pp.15-16.

Currently before the Court is plaintiff's motion for reconsideration. Dkt. #46. In support of the motion, plaintiff's counsel proffers plaintiff's verified bill of particulars, which alleges that defendant failed to follow its own plan, rule or standard created pursuant to regulation order and violated the New York State Property Maintenance Code; other statutes applicable to Federal Railroad Safety Act of 1970; and 49 CFR. Dkt. #46-1, ¶ ¶ 6-7 & Dkt. #46-2, pp.2-3. Plaintiff also proffers his interrogatories, wherein he explained:

> CSXT is required under federal regulation to implement **safety guidelines** and **follow rules** implemented to protect its own employees from dangerous and hazardous conditions and allows

for proposed studies. These same conditions pose a threat of harm to pedestrians crossing the CSXT train tracks as well.

The **New York State Property Maintenance Code** also requires property owners to maintain their property in a safe and clean condition. Here, should Plaintiff and other pedestrians be deemed invited guests, then CSXT has a duty and an obligation to make the property safe for pedestrian traffic.

In 2008, the **Rail Safety Improvement Act of 2008** (RSIA) was signed into law. Title II, Division A, Section 201 is entitled Pedestrian Crossing Safety and addresses safety for pedestrians and identifies addressing trespassers. CSXT was a participant in the workshop. A detailed summary report titled **"ROW Fatality and Trespass Reduction Workshop 2008"** was addressed. The report states, "Hazard Management Techniques such as risk-based hazard analysis should be identified, evaluated and recorded and corresponding mitigation strategies identified." This is a continuous process. . . .

It is also stated, "Installing fences and other barrier materials, such as landscaping plantings, can be **very effective in prohibiting access to railroad tracks**, while funneling passengers away from **potential hazards** and towards **desired crossing points** that are equipped with appropriate warning devices."

Dkt. #46-1, ¶ 9 & Dkt. #46-4, p.5. When asked for specific provisions of the New York

State Property Maintenance Code that plaintiff contends CSX violated, plaintiff

responded: Sections 101,[1] 102,[2] 103,[3] 201,[4] 202,[5] 301,[6] 302,[7] and 304.[8] Dkt. #46-1, ¶ 9.

When asked about the specific provisions of the Federal Railroad Safety Act of 1970,

plaintiff identified 49 U.S.C. § 20106.[9] Dkt. #46-1, ¶ 9 Dkt. #46-4, p.9. Plaintiff also noted

that 49 CFR 214 *et seq*.[10] addresses Workplace Safety for Employees. Dkt. #46-1, ¶ 9 &

---

[1]Section 101 sets forth the Title, Scope and Purpose of the New York State Property Maintenance Code.

[2] Entitled "Applicability," Section 102 addresses conflicts between general and specific requirements within the New York State Property Maintenance Code; Maintenance of Equipment and Systems; Application of other codes; Referenced Codes and Standards; Requirements not covered by code; Application of references; Other laws and regulations; Partial invalidity; and Workmanship.

[3]Section 103 addresses administration and enforcement of the New York State Property Maintenance Code.

[4]Section 201 provides that the terms used within the New York State Property Maintenance Code are defined in this chapter.

[5]Section 202 provides general definitions for the provisions of the New York State Property Maintenance Code

[6] Section 301 provides that the owner of the premises shall maintain the structures and exterior property in compliance with the requirements of the chapter and that vacant structures and land shall be maintained by the owner in a clean, safe, secure and sanitary condition.

[7]Entitled "Exterior Property Areas," Section 302 addresses Sanitation; Grading and drainage; Sidewalks and driveways; Weeds; Rodent harborage; Exhaust vents; Accessory structures; and Defacement of property.

[8] Entitled "Exterior Structure," Section 304 provides that "[t]he exterior of a structure shall be maintained in good repair, structurally sound and sanitary so as not to pose a threat to the public health, safety or welfare" and addresses Unsafe conditions; Protective treatment; Premises identification; Structural members; Foundation walls; Exterior walls; Roofs and drainage; decorative features; overhang extensions; chimneys and towers; handrails and guards; Window, skylight and door frames; Insect screens; Doors; Basement hatchways; Guards for basement windows; Building security; and Gates.

[9] This statute addresses preemption of state laws, regulations or orders related to railroad safety.

[10] The stated purpose of this Part of of the Transportation Code "is to prevent accidents and casualties to employees involved in certain railroad inspection, maintenance and construction activities."

Dkt. #46-4, p.6. Plaintiff requests that the Court modify its determination with respect to defendant's motion *in limine* based upon these discovery responses. Dkt. #46-1, ¶ 23.

Defendant responds that plaintiff has never identified any statute, regulation, or internal rule that it violated, arguing that "[m]erely listing statutes that address railroads or property maintenance . . . is not 'evidence' of any violation of any statute." Dkt. #53, p.3. Defendant notes the Court's determination in its Decision and Order on defendant's summary judgment motion (Dkt. #27, p.14, n.7), that plaintiff "has not identified how CSX violated any statute, regulation or internal rule" and would not, therefore, consider plaintiff's "conclusory allegations that CSXT was required to follow certain standards." Dkt. #53, p.3. Defendant also argues that although plaintiff failed to proffer the documents he now asks the Court to consider, they fail to allege any violation of a statute or regulation in any event. Dkt. #53, p.4.

"It is well established that the interlocutory orders and rulings made pre-trial by a district judge are subject to modification by the district judge at any time prior to final judgment . . . ." *In re U.S.*, 733 F.2d 10, 13 (2d Cir. 1984). However, the standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc*., 70 F.3d 255, 257 (2d Cir. 1995). Such a motion "should not be granted where the moving party seeks solely to re-litigate an issue already decided." *Id.* Stated another way, a motion for

reconsideration should be granted only when the moving party identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice. *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013). Rule 60(b)(1) of the Federal Rules of Civil Procedure specifically provides that a court may relieve a party from an order based upon mistake, inadvertence, surprise or excusable neglect.

In as much as none of the provisions cited in plaintiff's discovery responses appear to impose any specific duty upon defendant with respect to any of the factual issues relevant to this action, the Court finds that even if plaintiff had proffered his discovery responses to the Court in response to defendant's motion *in limine*, plaintiff has failed to identify any relevant state or federal laws, rules or regulations that defendant has violated, and is, therefore, precluded from raising any violations of state or federal laws, rules or regulations at trial.

**SO ORDERED.**

**DATED:  Buffalo, New York**
**July 12, 2024**

          *s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**